## John F. Kraus, Jr., *vs.* Bethel Webber.

Suffolk. May 4, 1971. — June 7, 1971.

Present: Tauro, C.J., Spalding, Cutter, Quirico, & Braucher, JJ.

*Landlord and Tenant,* Landlord's liability to tenant or one having his rights, Hidden defect in demised premises.

In an action against a landlord by a business invitee of tenants for injuries sustained when the stairway of a fire escape forming part of the demised premises collapsed as the plaintiff was taking a bureau up, an admission by the defendant that she knew that the stairway was unsafe, and her testimony that a carpenter told her that "the stairway might be a bit shaky," and that she gave him "full instructions" about making repairs warranted a finding that the defendant had actual knowledge of a hidden defect in the stairway consisting of rotted "horses" below the top stair concealed by a painted baseboard [567]; testimony of the tenants warranted a finding that they were not in fact ever warned of the hidden defect by the defendant [568], and it was ordered that judgment be entered on a verdict returned for the plaintiff [568].

Tort. Writ in the Superior Court dated June 8, 1965. The action was tried before *Goldberg,* J.

*Edward T. Robinson* for the defendant.

*Francis J. Gallagher, Jr.,* for the plaintiff.

Spalding, J. This is an action of tort to recover for personal injuries sustained by the plaintiff by reason of a defect in a fire escape on premises owned by the defendant. The jury returned a verdict for the plaintiff which was recorded under leave reserved. Thereafter the judge granted the defendant's motion to enter a verdict for the defendant. The plaintiff's exception to this action presents the sole question for decision. The test to determine the correctness of the ruling is the same as in the case of a motion for a directed verdict. *Berwick & Smith Co.* v. *Salem Press, Inc.* 331 Mass. 196.

We summarize the evidence most favorable to the plaintiff. The plaintiff, John F. Kraus, Jr., was employed by a

moving company to move the belongings of one Arthur F. O'Brien and his family into premises owned by the defendant. O'Brien's wife is the daughter of the defendant. The O'Briens had just rented the second and third floors of the premises from the defendant as "paying tenants." The defendant was to occupy the first floor. A wooden fire escape, also described as a stairway with a piazza or porch, led directly from the second floor to the ground and was part of the demised premises.

The movers initially took some of the furniture up the front stairs. However, because it was difficult, they asked and were given permission by the O'Briens to use the stairway in question to take furniture up to the second floor. The stairway had no visible defects. It was examined by a fellow mover who had twenty-eight years of experience and he could find no defects. Ten to fifteen trips were made up the stairway with heavy furniture before the accident from which this action arises occurred. The plaintiff and another mover were taking a bureau up the stairway when the upper portion of it collapsed beneath them. The plaintiff was seriously injured. A finding was warranted that the collapse was due to a hidden defect in the stairs. There was conflicting testimony as to whether the defendant had knowledge of this defect, and, if she did, whether she warned her tenants of it.

It is settled law in this Commonwealth that "if the landlord knows of some hidden defect in the demised premises, of which the tenant is ignorant, then the obligation rests on the landlord to give notice thereof to the tenant, and, for injuries arising from such failure of duty, the landlord may be held liable in damages." *Stumpf* v. *Leland,* 242 Mass. 168, 171, a leading case which contains an exhaustive discussion of the subject. That case makes clear that nothing short of *actual* knowledge of the hidden defect on the part of the landlord coupled with a failure to warn the tenant of it will suffice to create liability. There was ample evidence that the defect in question here was hidden. A carpenter who worked for the defendant described it as follows:

"[T]he inner three horses on the stairway were gone, were rotted behind the baseboard. Those are concealed by that board; the baseboard is always painted so therefore it never shows rot." This defect in the "horses" was just below the top stair. The plaintiff was a business invitee of the tenants of the defendant and no contention is made to the contrary. Thus his rights against the defendant were the same as the tenants', his invitors. The questions presented are whether the defendant had actual knowledge of the hidden defect, and if she did, whether she warned the tenants of it.

1. The defendant argues that there was no evidence which would warrant a finding that the defendant knew of the existence of a hidden defect. We disagree. The plaintiff introduced the following testimony of the defendant at a previous trial (which resulted in a mistrial): Q. "And at the time that you were letting this property to them, you knew that the stairway was unsafe?" A. "Yes. . . . But they didn't have to use it, sir. They had no need to use it." THE JUDGE: "The question is at the time you let the property, did you know that the stairway was unsafe? That . . . [is] the question." A. "Yes, sir." To a question as to whether this was her previous testimony, she responded: "I take it it must be, sir." This prior testimony was an admission on her part that she had knowledge that the stairway was unsafe and the jury could have so found based on this alone. *Brown* v. *Metropolitan Transit Authy.* 341 Mass. 690, 695.

Moreover, she testified at other times in the course of the trial that she understood the carpenter to have said to her that "the stairway might be a bit shaky" and had authorized him to make repairs on the stairway. "[I]f they needed fixing, he would fix them if they in any way needed repair he would take care of it because he got *full instructions* about what had to be done" (emphasis supplied).

From the foregoing we conclude that there was sufficient evidence for the jury to find that the defendant had actual knowledge of the hidden defect in the stairway in question.

2. The defendant argues, in the alternative, that if she

had knowledge of the defect, she in fact warned her tenants of it. The testimony of her tenants is contradictory on this issue. In certain portions of their testimony they seem to say that they were warned to stay off the stairway. The following testimony, however, came from Mr. O.'Brien: Q. "Did . . . [the defendant] tell you the stairs on the fire escape were unsafe?" A. "Not that I remember, sir." THE JUDGE: "I don't get your answer." THE WITNESS: "Not that I remember." Q. "Did she tell you anything in reference to the stairs?" A. "No, it was always the piazza. The upper part of it."

Similar testimony was given by Mrs. O'Brien: Q. "But . . . [the defendant] had no occasion to mention to you and your husband about the stairway, just the piazza?" A. "[Y]es." Q. "And by the piazza, you mean —" A. "Yes." Q. ". . . this area?" A. "Top porch." Q. "But your testimony is she never told you the stairway was unsafe?" A. "I don't think she knew about the stairway being unsafe."

There was thus sufficient evidence from which the jury could find that the tenants were not in fact ever warned of the hidden defect in the stairway.

It follows that the plaintiff's exceptions are sustained and judgment is to be entered on the verdict returned by the jury.

*So ordered.*