BICKNELL, INC. *vs.* JOHN J. HAVLIN & another.

Suffolk.   February 13, 1980. — April 2, 1980.

Present: HALE, C.J., GRANT, & NOLAN, JJ.

*Insurance*, Agent's negligence.   *Contract*, Insurance.

In an action by a plaintiff alleging negligence of an insurance agent in
failing to place proper insurance coverage on two buildings leased to
the plaintiff, there was sufficient evidence to warrant a finding that
the defendant was the plaintiff's agent, and the defendant's admission
that he made "a technical error of judgment" was sufficient to raise an
inference of negligence and a breach of contract.   [498-501]

CIVIL ACTION commenced in the Superior Court on
April 30, 1975.

The case was tried before *Mitchell*, J.

*James S. Dittmar* for the plaintiff.

*Alan G. Miller* for the defendants.

NOLAN, J.   The plaintiff (Bicknell) claims to be aggrieved
by the direction of verdicts for the defendants John J.
Havlin and Corcoran & Havlin Insurance Agency, Inc.
(Corcoran & Havlin), on counts one and three of its com-
plaint alleging negligence in failing to place proper in-
surance coverage on two buildings leased to Bicknell and
located in Middleton.   As to count two, which alleges a
breach of contract, the trial judge ordered judgment not-
withstanding a verdict for the plaintiff in the amount of
$40,000.   At oral argument, the parties stipulated that the
damages assessed by the jury on count two constitute the on-
ly recoverable damages under all counts.   We reverse the
judgment on count two.

The test for determining the correctness of the judge's ac-
tion in directing verdicts requires us to examine the
evidence, including all reasonable inferences, in the light

most favorable to Bicknell. *Howes* v. *Kelman*, 326 Mass. 696, 696-697 (1951). The same standard applies to the review of a judgment notwithstanding a verdict. See *Minnefor* v. *Town Taxi, Inc.*, 4 Mass. App. Ct. 43, 44 (1976); *O'Shaughnessy* v. *Besse*, 7 Mass. App. Ct. 727, 728-729 (1979). Compare *Kraus* v. *Webber*, 359 Mass. 565, 565 (1971), which was decided under the former practice of entering a judgment under leave reserved, a practice not dissimilar to the entry of a judgment notwithstanding a verdict pursuant to Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974).

The jury could have found that Bicknell had been in the business of distributing swimming pools and their accessories and supplies since 1957. Havlin, treasurer of Corcoran & Havlin, and Corcoran & Havlin were independent insurance agents. Bicknell had been doing business with an insurance agency which was purchased by Corcoran & Havlin in 1969. At that time, Havlin met with the principals of Bicknell with a view toward a continuation of business with Bicknell. Havlin described himself as experienced in the insurance business. He told the representatives of Bicknell that he wanted "to handle [the Bicknell] account in a highly professional manner." Bicknell decided to retain Corcoran & Havlin and, thereafter, Havlin devoted himself to the Bicknell account. He procured from various insurance carriers all the insurance required by Bicknell — casualty, liability, automobile, surety, fidelity bonds, workmen's compensation and other coverages, except life insurance. Havlin made recommendations for particular types of coverage and gave advice freely to Bicknell. One of the earliest recommendations which was adopted was for the purchase of a multiperil policy for Bicknell's commercial stock. At the end of each month, Bicknell sent Corcoran & Havlin a report disclosing the value of commercial stock at each warehouse location. Corcoran & Havlin would then review the report to make sure that Bicknell was reporting in accordance with the policy. If the report was in order, Corcoran & Havlin would transmit it to the carrier.

When Bicknell started making reports, it had one completed and one unfinished building in Framingham and one

warehouse in Middleton. When the second building was completed in Framingham, Neal Smith, the vice president and treasurer of Bicknell, asked advice of Havlin as to how reports of commercial stock should be prepared. Stock was continually being moved from one building to another and from Framingham to Middleton. Havlin assured Smith that in Framingham there was no problem because there was blanket coverage under which the stock was covered up to a specified amount.

When Bicknell submitted its monthly report of inventory and its value on March 6, 1974, Havlin took notice that the value of the commercial stock at the warehouse in Middleton was $758,600. The limit of insurance coverage at that time for stock at this location was $540,000. Havlin telephoned Smith to inquire about new limits, and Smith agreed that new limits should be purchased. As a result, Havlin increased the coverage at Middleton to $750,000, effective immediately. During this telephone conversation, Smith told Havlin that two new warehouses, in the style of Quonset huts, were then under construction in Middleton and that Bicknell would lease them from the owner of the Middleton real estate.

Approximately ten days later, Havlin called Smith and discussed the insurance provisions of the draft of the lease. Smith informed Havlin that the two new warehouses in Middleton were just about ready for use. After Smith told Havlin the value of certain heaters which would be stored in the new warehouses, Havlin asked Smith if he thought that $50,000 would cover the stock in each building. When Smith indicated that this would be sufficient "at this point," Havlin said, "Let's slap fifty-thousand on each building." Havlin did not indicate that he meant specific coverage. Smith thought that the total limits of coverage were being increased by $100,000, consistent with the blanket type of coverage in force on the commercial stock in both Framingham and Middleton. Havlin placed specific, limited coverage of $50,000 on the stock in each building, effective April 4, 1974. Corcoran & Havlin on May 8, 1974, sub-

mitted its invoice to Bicknell for several changes in coverage, including the new specific coverage on the two buildings in Middleton. The language of the invoice did not distinguish the specific coverage on the contents of the two new buildings from the blanket coverage lately purchased for the contents of the other building in Middleton.

Bicknell transmitted to Corcoran & Havlin on May 6, 1974, its monthly report of stock for April, 1974. The report revealed the value of stock at Middleton to be $839,000. Without Bicknell's knowledge, Havlin assigned $739,000 in value to the old warehouse and $50,000 each to the two new warehouses. He sent the report to the carrier.

A fire broke out on June 3, 1974, in one of the two new warehouses in Middleton. The fire loss to the commercial stock amounted to $103,275.91. The carrier paid Bicknell $50,000, the amount of the endorsement of April 4, 1974.

In a letter dated June 10, 1974, from Havlin to the carrier concerning Bicknell, Havlin admitted making "a technical error of judgment due to unfamiliarity with the advantage of blanket, versus specific, coverage on contents." In the same letter Havlin confessed to "an obvious element of confusion" regarding the different types of coverage.

The evidence warranted a finding that Havlin was the agent of Bicknell. *Rayden Engr. Corp.* v. *Church,* 337 Mass. 652, 655 (1958). An agent is bound to use due care in the implementation of the agency, *Previews Inc.* v. *Everets,* 326 Mass. 333, 335 (1950), and in carrying out instructions of the principal-client. *Rayden* at 660. See also Restatement (Second) of Agency § 379(1) (1958). The nature and extent of the duty of care owed by an independent insurance agent to his client depends in part, at least, upon the degree of skill which he represents himself to possess.

> "If he holds himself out to the world as possessing certain skill, or if his business is such as to carry with it an implication that he possesses particular skill in effecting insurances, as in [the] case of an insurance broker, then his principal is justified in relying upon the

knowledge which he professes to possess, and he is bound to exercise the skill and to use the knowledge which the business requires." 3 Couch, Insurance § 25:37 at 335-336 (2d ed. 1960).

Havlin undertook to advise Bicknell and to make recommendations. It was Havlin, not Smith, who suggested "slapping" $50,000 on each building. The jury could find that this was one of many recommendations made by Havlin over a considerable period of time and that these were "special circumstances of assertion, representation and reliance" for which Havlin may be liable. *Rapp* v. *Lester L. Burdick, Inc.*, 336 Mass. 438, 442 (1957), quoted with approval in *McCue* v. *Prudential Ins. Co. of America*, 371 Mass. 659, 661 (1976).

There is no merit to Havlin's argument that the issue of his failure to use due care required the introduction of expert testimony. Havlin's admission of "a technical error of judgment" was sufficient to raise an inference of negligence, see *Manzoni* v. *Hamlin*, 348 Mass. 770 (1964), and a breach of contract.

The judgment on count 2 is reversed, and judgment is to be entered for the plaintiff on the verdict returned by the jury on that count.

*So ordered.*