Gants, J.
In April 2002, the plaintiff Kathleen Belliveau (“Belliveau”) filed this action against her employer, the defendant Jacob Stein, DMD (“Dr. Stein”), alleging that she suffered personal injury while working in Dr. Stein’s dental practice and that Dr. Stein failed to have workers’ compensation insurance, as required by law under G.L.c. 152, §25A. Dr. Stein then filed a third-party complaint alleging that the Bikofsky Insurance Agency (“Bikofsky”) was negligent in failing to procure workers’ compensation coverage for him when he came to its office and asked its agent to provide him with the insurance he needed to run his new dental practice. Bikofsky now moves for summary judgment on the third-party complaint. After hearing, for the reasons set forth below, Bikofsky’s motion for summary judgment is DENIED.
BACKGROUND
In evaluating a motion for summaiy judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, the facts stated below are presented in the light most favorable to Dr. Stein and should not be misunderstood as findings of the Court.
Before emigrating to the United States on December 28, 1990, Dr. Stein was a practicing dentist in Russia. He obtained a license to practice dentistiy in Massachusetts in 1994, after he completed a dental program at Boston University. On May 22, 1995, he closed on the purchase of an existing dental practice in Northborough. Shortly before the closing, on May 16, 1995, on the advice of his attorney, Dr. Stein visited the Bikofsky Insurance Agency for the first time in order to secure the necessary insurance for the purchase of the Northborough dental practice. Dr. Stein states that he informed Bikofsky’s agent, Paula Stone (“Stone”), that he was in the process of purchasing a dental practice and “I need insurance to run business."[1] Stone asked him a number of questions, including the nature of the business he was purchasing. As reflected in the Businessowner’s Application that Stone prepared from his answers, Dr. Stein explained that he was a dentist, that he owned the dental practice as an individual, that his dental practice was to be a tenant in an older building, that he had no previous insurance, and that his dental practice was new to him. It is not clear from the record whether she asked whether he had any employees or whether he volunteered this information, but he did make clear that he was purchasing a dental practice. Dr. Stein then signed the Businessowner’s Application that Stone had filled out. Stone arranged for Dr. Stein to obtain a Businessowner’s Policy, told him the annual premium, and took from him a check for a portion of this premium. This Businessowner’s Policy did not provide workers’ compensation insurance. Nor did Stone offer to provide workers’ compensation insurance for him, or explain that he was legally required to have such insurance if he were to employ anyone in his dental practice.
Dr. Stein believed that, by obtaining the insurance provided by Stone, he had been provided with all the insurance he needed to operate his dental practice. He was utterly unfamiliar with business insurance, stating that no such insurance had been required in Russia. Although he had purchased other forms of insurance in the United States, specifically medical malpractice and life insurance, he did not know of the existence of workers’ compensation insurance or the legal requirement that business owners procure such insurance on behalf of their employees.
Dr. Stein renewed the Businessowner’s Policy each year through 2001. On March 29, 2001, Belliveau, a dental hygienist employed by Dr. Stein in his dental practice, suffered an injuiy at work, which was later diagnosed as chronic rotator cuff syndrome and subacromial impingement syndrome of the right shoulder. Belliveau reported the injuiy to Dr. Stein, who reported it to Bikofsky. During his telephone call with another Bikofsky agent, he learned for the first time about workers’ compensation insurance, that he did not have it, and should have had it. His failure to have workers’ compensation insurance triggered Belliveau’s suit against him, and his third-party complaint against Bikofsky.
DISCUSSION
Bikofsky argues that, in the absence of “special circumstances of assertion, representation, and reli *320 anee,” which it contends are plainly not present here, the only duty of care that an insurance broker owes to its client is to act reasonably to procure the insurance that the client requests. Since there is no evidence that Dr. Stein specifically requested Stone to procure workers’ compensation coverage, Bikofsky contends that it is entitled to summary judgment on Dr. Stein’s negligence claim.
To understand how, Massachusetts law presently defines the duty of care of an insurance broker, it is important to see how that case law has evolved. In general, under black letter agency principles, “[a]n agent is bound to use due care in the implementation of the agency . . . and in carrying out instructions of the principal-client.” Bicknell, Inc. v. Havlin, 9 Mass.App.Ct. 497, 500 (1980) (citation omitted). The establishment of a principal-agent relationship imposes on the agent “a duty to proceed in accordance with instructions and to report what was not being done under those instructions.” Rayden Engineering Corp. v. Church, 337 Mass. 652, 660 (1958). See also Rae v. Air-Speed, Inc., 386 Mass. 187, 192 (1982) (the “well settled rule (is) that an insurance agent or broker who, with a view to compensation for his services, undertakes to procure insurance for another, and through his fault and neglect fails to do so, will be held liable for any damage resulting therefrom,” quoting Annot., 64 A.L.R.3d 398, 404, 410 (1975)). Therefore, at a minimum, an insurance broker has a duty to act reasonably to do what she is told by her client or to report to the client when she is unable to comply with those instructions.
Even under this minimal duty of care, there is sufficient evidence in the summary judgment to raise a genuine issue of material fact as to whether Bikofsky breached this duty. When Dr. Stein told Stone that he was starting his own dental practice and “I need insurance to run business,” he effectively asked Stone to provide him with any insurance that he was legally required to have to operate his dental practice. When Stone sold him the Businessowner’s Policy, he reasonably understood that this policy included all the insurance coverage that he needed to run his business, including all insurance coverage mandated by law. By failing to explain to him that this Businessowner’s Policy did not include the mandatoiy workers’ compensation coverage, she arguably failed both to comply with his instructions and to report to him that she had provided him with less than he had asked for. Therefore, even without “special circumstances of assertion, representation and reliance,” there is evidence of a breach of Bikofsky’s duly of care sufficient to defeat summary judgment.
When there are “special circumstances of assertion, representation and reliance,” the duty of care owed by an insurance broker to her client goes beyond this bare minimum. See Rapp v. Lester L. Burdick, Inc., 336 Mass. 438, 438-39 (1957); McCue v. Prudential Ins. Co. of America, 371 Mass. 659, 661 (1976). “The nature and extent of the duty of care owed by an independent insurance agent to his client depends in part, at least, upon the degree of skill which he represents himself to possess.” Bicknell, Inc. v. Havlin, 9 Mass.App.Ct. at 500. Therefore, when an insurance broker describes himself as experienced in the insurance business, handles all of a client’s insurance coverages, and freely makes advice and recommendations as to particular types of coverage, the broker reasonably is expected to state clearly to the client whether he is obtaining an additional $100,000 in blanket coverage for all the client’s warehouses, or $50,000 on each of two new warehouses, and may be held liable for the losses that arose from the client’s misunderstanding. Id. at 499-500. Similarly, when the agent of an insurance company that has provided health insurance to the insured for 28 years tells the insured that a medical report from the family’s doctor is needed for the new health insurance policy being applied for, but fails to inform the insured that the application would be rejected if the medical report were not received within 45 days, the insurance company breached its duly of care when that deadline was allowed to pass without warning or comment. McCue v. Prudential Ins. Co. of America, 371 Mass. at 660-61. As another example, when an insurance broker who holds himself out as knowledgeable in the field of construction industry insurance fails to advise his construction company client that, in the absence of specific direction, he was not going to renew a builder’s risk policy even though he knew that the client construction company had yet to complete the relevant construction project, the broker is liable for the loss of insurance coverage that arose when the policy was not renewed. Construction Planners, Inc. v. Dobax Ins. Agency, Inc., 31 Mass.App.Ct. 672 (1991). While each of these cases are different, they articulate a general theme: when the insurance broker claims special knowledge about either the insurance industry or the insurance needs of a particular type of business, or has a long-standing relationship with the client, or has otherwise fostered a relationship in which the client has come to rely on the broker to help him procure necessary and appropriate insurance, the duty of care of such an insurance broker includes a duty to be reasonably clear in informing the client as to what he has done and what he has not done, as to when there is coverage and when there is not, especially when the client otherwise reasonably would be mistaken in his assumption as to what the broker had done and whether there was coverage.
To be sure, a broker, in the absence of guidance from his client, is under no general duty to obtain insurance coverage for the client that the broker believes the client should have or to renew an insurance policy. Nor is there a general duty for an insurance broker to become a full-fledged insurance advisor or consultant, in the absence of additional compensation *321 for such advice. See Baldwin Crane & Equipment Corp. v. Riley & Reilly Insurance Agency, Inc., 44 Mass.App.Ct. 29, 31-32 (1997); Robinson v. Charles A. Flynn Insurance Agency, Inc., 39 Mass.App.Ct. 902 (1995) (rescript) (without special circumstances of assertion, representation, and reliance, insurance broker has no duty to advise client as to the availability of different types of motor vehicle coverage).
Yet, when there are “special circumstances of assertion, representation and reliance,” such that the client has come to rely on the experience and expertise of the insurance broker, a broker’s duty of care includes at least the duty to inform the client of coverage that a client of reasonable prudence should have but which the client has not yet obtained. See generally Construction Planners, Inc. v. Dobax Ins. Agency, Inc., 31 Mass.App.Ct. at 675-77. This modestly heightened duty of care respects the client’s role as the ultimate arbiter of the insurance he procures, yet recognizes that a client reasonably may rely on an insurance broker to help him understand his insurance needs and the arcane language, shorthand, and codes used in insurance policies and correspondence. It also recognizes that, when a broker induces a client to place policies through him because of his experience and expertise, he reasonably is expected to exercise the care that comes from such experience and expertise, for which he is earning a commission.
Whether there exist “special circumstances of assertion, representation and reliance” that trigger this modestly heightened duty is generally a juiy question. McCue v. Prudential Ins. Co. of America, 371 Mass. at 661. “Facts relevant to this inquiry include (1) the complexity and comprehensiveness of the insurance business; (2) whether a continuing relationship had existed between [the broker and client] over a period of years; (3) the frequency of contact [the broker] had with [his client] to attend to his insurance needs; and (4) the extent to which [the client], because of the complexity of the policies, had come to rely on the advice of [the broker].” Schwartz v. The Travelers Indemnity Company, 50 Mass.App.Ct. 672, 680-81 (2001). Here, there is sufficient evidence in the summary judgment record to create a genuine dispute of fact on this issue. While Dr. Stein just walked into Bikofsky’s office on May 16, 1995 to purchase insurance that day and had no pre-existing relationship with Stone or any other agent of Bikofsky, there is evidence that Dr. Stein, as an immigrant beginning a new dental practice who was unfamiliar with insurance matters involving a new business, relied entirely on Bikofsky to make sure that he was provided with all the insurance he reasonably needed to operate his dental practice, especially any insurance he was legally required to obtain. As to matters as basic as insurance coverage legally mandated for all employers, Dr. Stein reasonably could have expected that a business holding itself out as an insurance company had sufficient expertise to know of such legal requirements and would either provide him with such coverage or specifically inform him that the policy he was purchasing did not include such mandatory coverage. Moreover, while Dr. Stein had no relationship with Bikofsky when he first walked into its office on May 16, 1995, a jury may find that such a relationship developed in the six years that followed, when he renewed his policy through Bikofsky.
If the jury were to find that there were indeed “special circumstances of assertion, representation and reliance,” the jury may also reasonably find that Bikofsky breached the heightened duty of care by not providing him with workers’ compensation coverage or, alternatively, by failing to inform him that he had not obtained workers’ compensation coverage and that such coverage was mandated by law for all employers.
ORDER
For the reasons stated above, this Court hereby ORDERS that Bikofsky’s motion for summary judgment is DENIED.

At another point in his deposition, Dr. Stein recalled that he said, “I need Insurance, what I need to run dental practice. ”