ADAM J. CANNON & another[1] *vs.* MARIE E. CANNON.

No. 06-P-495.

Middlesex. April 2, 2007. - June 25, 2007.

Present: DUFFLY, BROWN, & GRASSO, JJ.

*Insurance,* Life insurance: change of beneficiary. *Contract,* Validity, Consideration, Promissory estoppel. *Unjust Enrichment.*

In an action brought by adult children of a decedent against the former wife of the decedent, claiming a share of the proceeds that she collected from the decedent's life insurance policy, a trial court judge erred in granting summary judgment in favor of the former wife, where the facts of the case established a viable claim to shares of the policy proceeds, under traditional contract principles [418-422], those of promissory estoppel [422-423], or money had and received [423].

CIVIL ACTION commenced in the Superior Court Department on January 25, 2002.

The case was heard by *Thomas E. Connolly,* J., on a motion for summary judgment.

*William N. Batty, Jr.,* for the plaintiffs.

*Thomas A. Reed* for the defendant.

GRASSO, J. While hospitalized at the New England Medical Center and dying from cancer, Douglas Cannon sought to change the beneficiary designation on a policy of life insurance with Primerica Life Insurance Company (Primerica) that named his estranged wife, Marie Cannon, as sole beneficiary. Because he and Marie were engaged in divorce proceedings and subject to a restraining order prohibiting such changes, Douglas sought permission from the Probate and Family Court. After obtaining the necessary approval, Douglas signed a change of beneficiary designation and added his adult children from a prior marriage, Adam J. Cannon and Laura H. Reich (together, the children), as beneficiaries together with Marie. Marie also signed the beneficiary change form.

---

[1]Laura H. Reich.

After Douglas died, Marie collected the entire proceeds on the policy. At issue in this appeal is whether Douglas's children have a claim to a share of the proceeds collected by Marie.

1. *Background.* When Marie refused to pay them a share of the policy proceeds, the children commenced an action against her in Superior Court alleging breach of contract, promissory estoppel, and money had and received.[2] The children based their claim on the beneficiary designation signed by Douglas and Marie, as well as assurances from Marie that they need not file the form with Primerica because Marie would collect the proceeds and distribute one-third shares to each. Marie responded that she owed them nothing because she had complied with the probate judge's order; she was the sole beneficiary of record when Douglas died; and she never promised to share the policy proceeds.

On Marie's motion for summary judgment, a judge of the Superior Court ruled that Marie had no contractual obligation to share the proceeds because she had completed her obligation to Douglas by signing the beneficiary designation, and Douglas failed to effectuate the change by having his signature witnessed by a disinterested person as required by G. L. c. 175, § 123.[3] In consequence, the judge concluded, any later promise by Marie to share the proceeds with the children in lieu of their forwarding the change of beneficiary designation to Primerica after Douglas's death was gratuitous and not supported by adequate consideration. For essentially the same reason, the judge ruled that a claim of promissory estoppel or for money had and received would not lie: because Douglas's failure to comply with G. L. c. 175, § 123, rendered the beneficiary change a legal nullity, there was no forbearance by the children and no benefit to Marie.

---

[2]The children also instituted, and then abandoned, a claim against Primerica.

[3]General Laws c. 175, § 123, inserted by St. 1989, c. 723, provides in pertinent part:

> "No life insurance company shall accept or take action on any written request to change the designation of beneficiary under any policy of life or endowment insurance unless the signature of the person requesting the change is witnessed by a disinterested person. For purposes of this section, a disinterested person is one who is over eighteen years of age and not designated as a beneficiary in the requested change. Upon receipt and acceptance of the change of designation of beneficiary, the insurance company shall provide written notice of the change to the insured at the owner's last known address."

We conclude that the judge erred in granting summary judgment to Marie. Whether we view the children as asserting a claim for breach of contract, promissory estoppel, or money had and received, disputed issues of material fact exist as to whether Marie breached an agreement to share the proceeds of Douglas's life insurance policy.

2. *The pertinent facts.* We view the facts and reasonable inferences in the light most favorable to the children, the parties against whom summary judgment was granted. See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002); *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983); *Northrup* v. *Brigham*, 63 Mass. App. Ct. 362, 366-367 (2005). "As to materiality, the substantive law will identify which facts are material." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Molly A.* v. *Commissioner of the Dept. of Mental Retardation*, 69 Mass. App. Ct. 267, 268 n.5 (2007). Douglas and Marie married on May 4, 1996. The marriage was the second for each. Douglas's prior marriage produced two children, Adam and Laura.

Douglas had purchased a life insurance policy from Primerica that, by the time of his death, carried a face value of $169,000. On October 5, 1997, Douglas designated Marie as the sole beneficiary of that policy. He also devised an estate plan that left everything to Marie, and nothing to his children.

Thereafter, the marriage deteriorated, and in June, 2000, Douglas filed for divorce. At about the same time, Douglas developed cancer and, throughout most of the divorce proceedings, was receiving chemotherapy treatment for lymphoma. By late April or early May, 2001, after many courses of chemotherapy proved unsuccessful, Douglas's lymphoma was at a critical stage. His physicians advised him that his best hope for recovery was a series of intensive chemotherapy treatments that offered only a twenty-five percent chance of survival.

Mindful that Marie would take his entire estate should he die prior to finalization of the divorce, Douglas sought orders in the Probate and Family Court that would permit him to modify his estate plan and provide for his children. Because Douglas remained hospitalized at the New England Medical Center, his attorney, Robert Rutecki, attended the hearing on his behalf.

As relevant here, on June 18, 2001, a probate judge entered temporary orders that permitted Douglas and Marie to withdraw $50,000 each from an investment account and change the beneficiaries of their respective life insurance policies by adding two blood relatives as additional beneficiaries.

To effectuate the desired change of beneficiaries, Attorney Rutecki forwarded to Douglas, at the hospital, a change of beneficiary form referencing the Primerica policy.[4] On June 25, 2001, Douglas completed the portion of the form dealing with "Change of Beneficiary" and added the children as beneficiaries of the policy along with Marie. Ann Pearsons handwrote the pertinent beneficiary information on the form, and Douglas signed the form in her presence. Although Pearsons witnessed Douglas sign the form, for reasons that remain unclear, she did not affix her signature as a witness on the line provided next to Douglas's signature. Douglas then mailed the form to Marie for her signature. Marie signed the form on the signature line designated for spouses and mailed it back to Douglas at the hospital as he had requested.

Douglas died at New England Medical Center on July 6, 2001. A few days after his death, Attorney Rutecki contacted Primerica and learned that the company had no record of the change of beneficiary designation. According to its records, Marie was the only named beneficiary on Douglas's life insurance policy. Attorney Rutecki sought Ann Pearsons's assistance in locating the change of beneficiary designation. He learned from Pearsons that Douglas had signed the form and sent it to Marie for her signature rather than to Primerica.[5]

Armed with this information, Attorney Rutecki contacted At-

---

[4]The change of beneficiary designation at issue appears on a form prepared by Primerica entitled "Multipurpose Change Form" (MCF). The MCF has sections for "Name Change," "Transfer Ownership," and "Change of Beneficiary." At the bottom of the form are lines for "Signature of Policy Owner" and "Signature of Policy Owner's Spouse (if living in Community Property State) or Irrevocable Beneficiary." Next to these signature lines are lines captioned "Signature of Witness or Agent & Solution #."

[5]Douglas apparently believed that Marie's signature was required before the form could be submitted to Primerica. We need not address whether, even without Marie's signature, an otherwise valid change of beneficiary designation would be binding upon Primerica by virtue of the Probate and Family Court order authorizing such change.

torney Mark Smith, who represented Marie in the divorce, to inquire as to the whereabouts of the change of beneficiary designation. Attorney Smith told Rutecki that he would speak with Marie and get back to him.

While this was transpiring, New England Medical Center forwarded Douglas's mail to the address that he shared with Pearsons prior to his hospitalization. Among the items included was the original change of beneficiary form bearing Marie's and Douglas's signatures. Pearsons forwarded the form to Attorney Rutecki, who then advised Attorney Smith that the original form signed by Douglas and Marie had been located.

Attorneys Rutecki and Smith discussed how to handle the collection of Douglas's life insurance proceeds from Primerica. Rutecki proposed two options: (1) submit the change of beneficiary form to Primerica; or (2) leave the previous beneficiary designation on Primerica's records (in Marie's name only), with Marie collecting the entire policy proceeds and distributing one-third each to Adam and Laura respectively. Attorney Smith advised Attorney Rutecki that Marie had "no problem" with the second option.[6] Relying on this representation on behalf of the children, Attorney Rutecki elected to hold the original change of beneficiary form in his file and not send it to Primerica.

In late August or early September, Attorney Rutecki learned that Marie had received all the policy proceeds from Primerica and was refusing to distribute shares to the children. He contacted Attorney Smith and reminded him of their earlier conversation, the assurances given, and his reliance on these assurances. Attorney Smith indicated that he would talk with Marie. On September 7, 2001, Attorney Smith conveyed Marie's position: she had no legal obligation to share the life insurance proceeds with the children.[7]

3. *Discussion.* Whether G. L. c. 175, § 123, would bar Doug-

---

[6]In her affidavit, Marie maintained that she signed the change of beneficiary form sent to her by Douglas because she was ordered to do so by the Probate and Family Court; she had no interest in changing her own insurance beneficiary designation and did not do so; and she never authorized Attorney Smith to promise the children or their late father's attorney that she would share the proceeds.

[7]Marie asserted that Douglas's failure to have his signature witnessed

las's children from asserting a claim against Primerica for a share of the proceeds of Douglas's life insurance policy presents an interesting question, but one that we need not decide in order to resolve whether they have a viable claim against Marie.[8] Indeed, we view the alleged insufficiency of Douglas's change of beneficiary designation under G. L. c. 175, § 123, as a red herring that detracts from a proper consideration of the claims before us. The statute is directed to the obligations of insurance companies and their insureds, not the contractual rights of private parties and putative beneficiaries to each other. See *Acacia Mut. Life Ins. Co.* v. *Feinberg*, 318 Mass. 246, 250-251 (1945) (interpreting predecessor to G. L. c. 175, § 123, as requiring substantial compliance by insured with insurer's procedures for changing beneficiaries). Moreover, the portion of the statute requiring the signature of the person requesting the change to be witnessed by a disinterested person (added by St. 1989, c. 723) has an obvious purpose of preventing fraud in the designation of beneficiaries that is not present here. Whatever concern Primerica might have regarding its liability for payment to the designated beneficiaries of a deceased policyholder has no applicability here, where the beneficiaries claim against Marie. Marie understood that Douglas had designated the children as additional beneficiaries and she agreed to their designation.

The judge first went astray in applying the requirements of the statute, which would bear on a claim by the children against

---

rendered the change form ineffective in itself and that Douglas failed to forward the change form to Primerica.

[8]Whether the MCF executed by Douglas would satisfy the statute's requirement that his signature be "witnessed by a disinterested person" turns entirely on whether Ann Pearsons's witnessing of Douglas's signature must be evidenced on the document requesting the change or may be proved otherwise —whether by affidavit or testimony. The parties do not dispute that Pearsons is a "disinterested person" within the statutory definition, as she was over eighteen years of age and was not designated as a beneficiary of the requested change. Moreover, under the terms of the Primerica policy, a valid beneficiary change designation would take effect on the date signed, even if the insured died prior to Primerica's receipt of the change, provided no prior payment had been made.

We need not resolve the statutory question because the children did not file the MCF with Primerica prior to its payment of the policy proceeds and make no claim on appeal that Primerica paid the proceeds improperly.

Primerica, to their claim against Marie for a share of the proceeds. That claim exists independently of the statute and flows from the Probate and Family Court's authorization, Douglas and Marie's execution of the change of beneficiary designation, and the children's subsequent reliance on that change request and Marie's promise to share the proceeds if they forbore from filing the change of beneficiary designation with Primerica.

The children's action encompasses a claim that (1) Douglas and Marie agreed to a change of the beneficiary designation of Douglas's policy; and (2) after Douglas's death, Marie and the children (the other beneficiaries) agreed as to how the proceeds were to be collected from Primerica and distributed. Viewed in the light most favorable to the children, the facts establish a viable claim to shares of the policy proceeds, whether under traditional contract principles, see *Quinn* v. *State Ethics Commn.*, 401 Mass. 210, 216 (1987); *David J. Tierney, Jr., Inc.* v. *T. Wellington Carpets, Inc.*, 8 Mass. App. Ct. 237, 239-241 (1979); those of promissory estoppel, see *Simon* v. *Simon*, 35 Mass. App. Ct. 705, 711-712 (1994); or of money had and received. See *Stone & Webster Engr. Corp.* v. *First Natl. Bank & Trust Co. of Greenfield*, 345 Mass. 1, 4 (1962).

a. *Breach of contract.* The motion judge concluded that no breach of contract occurred because Marie did not engage in a bargained-for exchange that was supported by consideration. He reasoned that Douglas and Marie's agreement to terms for the purposes of arriving at an agreeable Probate and Family Court order did not constitute a bargained-for exchange. In his view, even were the court order to embody a contract, Marie complied fully with her obligations by signing the MCF, and Douglas's failure to have the designation witnessed in conformity with G. L. c. 175, § 123 (an assumption on which we express no opinion), imposed no obligation to share the proceeds according to the terms of that designation. We disagree.

Whether bargained for or imposed by the probate judge in the context of the ongoing divorce, the Probate and Family Court order created legally enforceable benefits for, and obligations on, both Douglas and Marie. Each received $50,000 cash from an investment account and the right to amend the beneficiary desig-

nation of his and her respective life insurance policies by adding two blood relatives. The order did not require them to amend their beneficiary designations, but it did permit them to do so and did require them to agree to modification of the other's beneficiary designation. So viewed, the order created an obligation that also afforded each a benefit, whether availed of or not.

Douglas availed himself of the authorization and designated his children as additional beneficiaries in the presence of Ann Pearsons, a disinterested person. By signing the designation, Marie acknowledged her understanding of that designation and her ability to do likewise. Marie also accepted the $50,000 cash disbursement provided for in the court order. We fail to discern how the ability to change her own beneficiaries and the receipt of a lump sum disbursement did not provide a benefit to Marie sufficient to amount to contractual consideration. Indeed, Douglas's change of beneficiary designation and Marie's assent to that designation was part of a greater bargained-for exchange in the division of the marital estate by which each received immediate cash and ceded a two-thirds interest in the other's life insurance policy. Moreover, "[t]hat a part of the consideration . . . standing alone . . . might have been illusory is no objection to the sufficiency of the consideration. . . . The law is not concerned with the adequacy of the consideration, as long as it is 'valuable.' *Barnett* v. *Rosen*, 235 Mass. 244, 249 (1920). *Graphic Arts Finishers, Inc.* v. *Boston Redev. Authy.*, 357 Mass. [40,] 43 [(1970)]." *V. & F.W. Filoon Co.* v. *Whittaker Corp.*, 12 Mass. App. Ct. 932, 932-933 (1981).[9]

Beyond a bargained-for exchange between Douglas and Marie, the facts also support another bargained-for exchange whereby Attorneys Rutecki and Smith (acting on behalf of the children and Marie, respectively) agreed that Marie would claim the insurance benefits and remit two-thirds to the children in lieu of their filing the newly executed change of beneficiary designation with Primerica. The judge erred in concluding that the insufficiency of Douglas's change of beneficiary designation

---

[9]As third party beneficiaries, Adam and Laura are entitled to enforce the contract, which was for their benefit. See *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 195 (1982). As intended beneficiaries, they benefit from the promised performance. See *Miller* v. *Mooney*, 431 Mass. 57, 61-62 (2000).

under G. L. c. 175, § 123, rendered the consideration for such a contractual obligation illusory. The fact that an attempt by the children to seek payment from Primerica by filing the beneficiary change form ultimately might have failed does not mean that its abandonment was not sufficient consideration to support a contract between the children and Marie regarding the collection and disbursement of the policy proceeds. See *Margolies v. Hopkins,* 401 Mass. 88, 91 (1987). "Abandonment of a claim brought in good faith is good consideration for a promise even if the claim ultimately might have been unsuccessful." *Ibid.*

b. *Promissory estoppel.* For substantially the same reason, the judge also erred in concluding that no action would lie against Marie under a theory of promissory estoppel. See *Loranger Constr. Corp. v. E.F. Hauserman Co.,* 376 Mass. 757, 760-761 (1978). The children's detrimental and reasonable reliance on the promise that she would collect the entire proceeds and remit shares to them furnishes a basis for recovery even apart from the benefit to Marie from the court order. See *ibid.* "Circumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Bongaards v. Millen,* 440 Mass. 10, 15 (2003). See *Sullivan v. Chief Justice for Admn. & Mgmt. of the Trial Ct.,* 448 Mass. 15, 27-28 (2006).

If proved, the agreement that Marie would collect the proceeds and remit shares to the children in lieu of their filing the beneficiary change designation with Primerica amounts to a promise that reasonably could be expected to induce forbearance of a substantial character and did so. See *Stevens v. Nagel,* 64 Mass. App. Ct. 136, 138 (2005). The probate judge had approved a change of beneficiary designation; Douglas had completed the change prior to his death, signing in the presence of Pearsons; and Marie had signed her assent. All that remained was for the change of beneficiary designation to be forwarded to Primerica for collection. Whether Primerica would recognize the designation as satisfying the requirements of G. L. c. 175, § 123, is not so important as the fact that the children had a

colorable claim to a share of the proceeds based upon the executed designation, and in reliance on a promise that the proceeds would be shared, they refrained from asserting it. In such posture, it was error to conclude that no action would lie against Marie under principles of promissory estoppel because there was no legal forbearance by the children. Factual questions exist whether a representation was made by Marie or on her behalf regarding how the proceeds would be collected and shared and whether, in the circumstances, the children reasonably relied on that representation to their detriment.

c. *Money had and received.* We need not belabor that the same factual predicate would support an action for money had and received. An action for money had and received lies to recover money which should not in justice be retained by the defendant, and which in equity and good conscience should be paid to the plaintiff. See *Stone & Webster Engr. Corp.* v. *First Natl. Bank & Trust Co. of Greenfield*, 345 Mass. at 4; *Stevens* v. *Nagel*, 64 Mass. App. Ct. at 140-141. Genuine issues of material fact exist regarding whether Marie has received money which in equity and good conscience belongs to the children. See *Cookson Group PLC* v. *Flynn*, 52 Mass. App. Ct. 909, 910 (2001).

We reverse the judgment dismissing the complaint and remand the case to the Superior Court for determination of the children's claims to entitlement to shares of the life insurance proceeds.

*Judgment reversed.*