**THRIVENT FINANCIAL FOR LUTHERANS, Plaintiff,**

v.

**Michelle STROJNY et. al., Defendants.**

**Civil Action No. 11–11011–JLT.**

United States District Court,
D. Massachusetts.

Aug. 9, 2012.

Hannah S. Symonds, Jay P. Symonds, Peri K. Agulnek, Wilson Elser Moskowitz Edelman & Dicker, LLP, Boston, MA, for Plaintiff.

Joseph J. Czerwonka, Czerwonka & Bunk, Fall River, MA, James P. Hoban,

Bowditch & Dewey LLP, Worcester, MA, for Defendants.

## MEMORANDUM AND ORDER

TAURO, District Judge.

### I. Introduction

Plaintiff in this interpleader action is an insurance company that issued a life insurance policy to Decedent, Paul Monroe, with a death benefit in the amount of $75,000 and an Annuity. Plaintiff alleges that there are conflicting claims to the death benefit from the policies and asks the court to determine the proper beneficiaries. Currently before the court are Plaintiff's *Motion for Summary Judgment* [# 30], Defendants Strojny and LaBlue's *Motion to Vacate Final Decree of Interpleader* [# 31, # 32], Defendant Metz's *Motion for Summary Judgment* [# 33], and two *Motions to Strike* [# 67, # 70].

### II. Background

#### A. Factual Background

Plaintiff Thrivent Financial for Lutherans ("Thrivent") is a fraternal benefit society.[1] Thrivent issued a Universal Life Insurance Policy (the "Life Policy") to Decedent, Paul Monroe ("Monroe"), in the amount of $75,000 on January 5, 1984.[2] At that time, Monroe designated his estate as the policy beneficiary.[3] On May 1, 1989, Thrivent also issued a Flexible Premium Annuity Contract (the "Annuity") to Monroe, designating Monroe's mother as his beneficiary.[4] In 1995, Monroe changed the beneficiaries of both his Life Policy and Annuity, naming his father, Harold Monroe, as the primary beneficiary, and his cousin, Allison A. Metz, as the secondary beneficiary on both policies.[5] Harold Monroe died in 1998.[6]

In September 2002, Monroe sent a Request for Change of Beneficiary to Thrivent designating Defendants Strojny and LaBlue as primary beneficiaries of the Life Policy and Annuity, listing them each as "friend."[7] Thrivent initially processed Monroe's request.[8] In a letter dated October 18, 2002 ("October 2002 letter"), however, Thrivent notified Monroe that "friend" was not an eligible beneficiary under Thrivent's by-laws, and therefore the designation of Defendants Strojny and LaBlue was invalid.[9] The October 2002 letter also included information about how Monroe could designate his estate as the policies' beneficiary to ensure that his friends received his death benefit.[10] Thrivent enclosed partially completed forms for that purpose.[11] The October 2002 let-

---

1. Pl. St. Material Facts [# 40] ¶ 9 (Exhibit C).

2. Pl.'s St. Mat. Facts ¶ 1; Def. Metz St. Mat. Facts [# 37] ¶ 1; Defs. Strojny and LaBlue St. Mat. Facts [# 53, # 54] ¶ 1.

3. Pl.'s St. Mat. Facts ¶ 2.

4. Pl.'s St. Mat. Facts ¶¶ 5–6; Def. Metz St. Mat. Facts ¶¶ 7, 9; Defs. Strojny and LaBlue St. Mat. Facts ¶ 2.

5. Pl.'s St. Mat. Facts ¶ 11; Def. Metz St. Mat. Facts ¶ 3; Defs. Strojny and LaBlue St. Mat. Facts ¶ 14.

6. Pl.'s St. Mat. Facts ¶ 12; Def. Metz St. Mat. Facts ¶ 15.

7. Pl.'s St. Mat. Facts ¶ 13 (Exhibit E); Def. Metz St. Mat. Facts ¶¶ 16–17; Defs. Strojny and LaBlue St. Mat. Facts ¶ 5.

8. Defs. Strojny and LaBlue St. Mat. Facts ¶ 8 (Exhibit 4); Def. Metz St. Mat. Facts ¶ 19.

9. Pl.'s St. Mat. Facts ¶ 14 (Exhibit F) (the October 2002 letter) [# 40–1]; Def. Metz St. Mat. Facts ¶ 21.

10. Pl's St. Mat. Facts ¶ 15, Ex. F; Def. Metz St. Mat. Facts ¶ 21.

11. Pl's St. Mat. Facts ¶ 15, Ex. F; Def. Metz St. Mat. Facts ¶ 21.

ter further explained that the previously designated beneficiaries—Harold Monroe and Allison Metz—would remain in place until Monroe submitted another change of designation form.[12] There is no dispute that Monroe received the October 2002 letter,[13] or that Monroe did not submit the forms to properly change his beneficiary to allow his friends to collect his death benefit.[14]

Monroe died on December 20, 2010.[15] At the time of his death, the benefit payable under the Life Policy totaled $59,917.21 and the amount payable under the Annuity totaled $30.29.[16] After Monroe's death, Thrivent sent claims kits to Defendants Strojny and LaBlue.[17] On December 29, 2010, a Thrivent representative, Kris Ristau, called both Defendants Strojny and LaBlue to explain that the kits had been sent in error.[18] Ms. Ristau notified Strojny and LaBlue that they were not proper beneficiaries under the policy and, therefore, would not receive any death benefits from either the Life Policy or Annuity.[19] As a courtesy, Thrivent honored the funeral home assignments executed by Defendants Strojny and LaBlue in the amount of $1,795.[20]

In January, 2011, Defendants Strojny and LaBlue, through counsel, appealed internally Thrivent's determination that they were not proper beneficiaries.[21] In February, 2011, Thrivent affirmed its determination that Defendants Strojny and LaBlue were not proper beneficiaries and notified them of its decision by letter.[22] In March, 2011, counsel for Defendants Strojny and LaBlue notified Thrivent that they disagreed with its determination.[23]

In May, 2011, Thrivent received an executed claim package from Defendant Metz.[24] Thrivent claims no title to, or interest in, the benefits under Monroe's Life Policy or Annuity,[25] but it asserts that it is unable to determine the proper beneficiary of the policies and is concerned about exposing itself to multiple liability should it pay the policy to any defendant.[26] Thrivent requests that the court determine the proper beneficiary of the policies and discharge any and all liability related to the Life Policy and Annuity proceeds except to the party or parties entitled to the benefit.[27]

12. Pl.'s St. Mat. Facts ¶ 15, Ex. F; Def. Metz St. Material Facts ¶ 21; Defs. Strojny and LaBlue St. Mat. Facts ¶ 10.

13. Pl.'s St. Mat. Facts ¶ 14; Def. Metz St. Mat. Facts ¶ 21; Def. Strojny and LaBlue St. Mat. Facts ¶ 9.

14. Pl. St. Mat. Facts ¶ 16.

15. Pl.'s St. Mat. Facts ¶ 17 Ex. G; Def. Metz St. Mat. Facts ¶ 22; Defs. Strojny and LaBlue St. Mat. Facts ¶ 15.

16. Pl.'s St. Mat. Facts ¶ 18; Defs. Strojny and LaBlue St. Mat. Facts ¶ 19.

17. Defs. Strojny and LaBlue St. Mat. Facts ¶ 16.

18. Pl.'s St. Mat. Facts ¶ 9, Ex. I; Def. Metz St. Mat. Facts ¶ 26.

19. Pl.'s St. Mat. Facts ¶ 9, Ex. I; Def. Metz St. Mat. Facts ¶ 26.

20. Pl.'s St. Mat. Facts ¶ 20.

21. Compl. [# 1] ¶ 16; Def. Metz St. Material Facts ¶ 28.

22. Compl. ¶ 16; Pl.'s St. Mat. Facts, Ex. H.

23. Compl. ¶ 17.

24. Pl. St. Mat. Facts ¶ 21, Ex. K; Def. Metz St. Mat. Facts ¶ 33.

25. Compl. ¶ 27.

26. Compl. ¶ 26.

27. Compl. ¶ 29.

## B. *Procedural Background*

Thrivent filed its *Complaint in Interpleader* in June, 2011. In July of that year, Defendants Strojny and LaBlue filed a number of *Counterclaims* [# 4, # 5] against Thrivent. On August 11, 2011, Plaintiff filed a *Motion for Entry of Final Decree of Interpleader* [# 9]. This court subsequently entered a *Final Decree of Interpleader* [# 11], granting Plaintiff's motion. On December 1, 2011, Thrivent filed a *Motion for Summary Judgment* [# 30] on the counterclaims of Defendants Strojny and LaBlue. That same day, Defendant Metz filed a *Motion for Summary Judgment* [# 33] against Thrivent, and Defendants Strojny and LaBlue filed *Motions to Vacate the Final Decree of Interpleader* [# 31, # 32]. In February, 2012, Thrivent and Defendant Metz each filed a *Motion to Strike* [# 67, # 70]. All pending motions are currently before the court.

## III. *Discussion*

### A. *Legal Standard*

#### I. *Summary Judgment*

The motions for summary judgment currently before the court are governed by Fed.R.Civ.P. 56(e). Pursuant to the Rule, the Court will grant a motion for summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."[28] The facts, and inferences drawn from them, are viewed in light most favorable to the non-moving party, here, Defendants Strojny and LaBlue.[29] In the First Circuit, "[s]ummary judgment is appropriate only if the record ... reflects that no genuine issue of material fact exists and that the moving party or parties are entitled to judgment as a matter of law."[30]

## II. *Rules Governing Thrivent as a Beneficent Society*

As a preliminary matter, Thrivent, as a beneficent society, is governed by Mass. Gen. Laws ch. 176 § 1 *et seq.*[31] Pursuant to section 23 of the statute, a benefit society has to provide each member with a certificate stating the amount of beneficent the society provides.[32] The certificate, along with the by-laws of the society and any amendments, form the agreement between the society and its members.[33] Any changes to the society's charter, articles of incorporation, constitution, or by-laws gov-

**28.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**29.** *See OneBeacon America Ins. Co. v. Comm. Union Assur. Co. of Canada*, 684 F.3d 237, 241 (1st Cir.2012) (stating that a motion for summary judgment is to be viewed, "in the light most favorable to the non-moving party," and that all reasonable inferences should be drawn in that party's favor.).

**30.** *Galloza v. Foy*, 389 F.3d 26, 28 (1st Cir. 2004) (citing Fed.R.Civ.P. 56(c)).

**31.** Mass. Gen. Laws ch. 176 § 1 ("Any incorporated society, order or supreme lodge, without capital stock, conducted solely for the benefit of its members and their beneficiaries, and not for profit, operated on a lodge system with ritualistic form of work, having a representative form of government, and which makes provision for the payment of benefits in accordance with this chapter, is hereby declared to be a fraternal benefit society.").

**32.** Mass. Gen. Laws ch. 176 § 23.

**33.** In pertinent part, Mass. Gen. Laws ch. 176 § 23 reads: "The certificate, together with any riders or endorsements attached thereto, the charter or articles of incorporation, the constitution and by-laws of the society, the application for membership, and declaration of insurability, if any, signed by the applicant, and all amendments to each thereof, shall constitute the agreement as of the date of issuance, between the society and the member."

ern the agreement as if they had been in force since its inception.[34]

### B. *Defendants Strojny and LaBlue's Counterclaims*

#### I. *Standing*

The court must first determine whether Defendants Strojny and LaBlue have standing to bring their counterclaims against Thrivent.[35] "To meet the standing requirements of Article III, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'"[36] Under Massachusetts law, in an action that would have survived if commenced by a decedent during his lifetime, only an executor or administrator of an estate has standing to bring claims on behalf of a decedent.[37]

In the present case, Defendants Strojny and LaBlue do not have standing to bring their counterclaims against Thrivent. Defendants assert their counterclaims on Monroe's behalf.[38] Claims brought on behalf of a decedent are governed by Mass. Gen. Laws 230 § 1, and must be brought by an executor or administrator of the decedent's estate.[39] The claims must also be of the type that would have survived if brought by the decedent during his lifetime.[40] Defendants Strojny and LaBlue are not, and do not claim to be, Monroe's executors or administrators as is required to assert claims on Monroe's behalf.[41] Because Defendants Strojny and LaBlue are not executors or administrators of Monroe's estate, they do not have standing to bring these counterclaims as a matter of law.[42] Independent of the

---

**34.** Mass. Gen. Laws ch. 176 § 23; *See also Goldman v. Comm. Travellers E. Acc. Ass'n.,* 302 Mass. 74, 18 N.E.2d 373, 375 (1938) (interpreting Mass. Gen. Laws ch. 176 as binding the parties in an insurance dispute to changes made to the by-laws of the society after Plaintiff purchased his policy, barring recovery).

**35.** *See DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 340, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) (citing *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

**36.** *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

**37.** Mass. Gen. Laws ch. 230 § 1; *Bateman v. Wood,* 297 Mass. 483, 9 N.E.2d 375, 377 (1937).

**38.** Defs. Opp. Mot. Summ. J. [# 51] at 2.

**39.** Mass. Gen. Laws ch. 230 § 1 ("An action which would have survived if commenced by or against the original party in his lifetime may be commenced and prosecuted by or against his executor or administrator.").

**40.** Mass. Gen. Laws ch. 230 § 1; *Bateman,* 9 N.E.2d at 377.

**41.** Defs.' Opp. Mot. Summ. J. at 10–11. Defendants Strojny and LaBlue's only claim in this respect is that they are the proper beneficiaries of Monroe's estate. *Id.* at 7.

**42.** Defs.' Opp. Mot. Summ. J. at 10–11; *Kochanek v. Prudential Ins. Co. of Am.,* 262 Mass. 174, 159 N.E. 520, 522 (1928) (characterizing the interest of a beneficiary in a life insurance policy as a "qualified vested interest, which is subject to be divested and defeated should the assured in his lifetime exercise the power given him to change a beneficiary." The Supreme Judicial Court in *Kochanek* emphasized that "substantial compliance" with the terms of the insurance "policy regulating change in beneficiaries must be followed[,]" and that "a mere unexecuted intention to change the beneficiary or beneficiaries will not be sufficient to bring about that result.") Because Defendants Strojny and LaBlue were never named beneficiaries, they never had a vested interest in the decedent's insurance policy.; *see also* Mass. Gen. Laws ch. 176 § 21(a) ("A society may, through its laws or rules, limit the scope of beneficiary designations and shall provide that no revocable beneficiary shall have or obtain any vested inter-

court's standing analysis, Defendants' counterclaims are without merit and fail as a matter of law under Rule 56. In light of the concerns raised in Defendants Strojny and LaBlue's *Motions to Vacate Final Decree of Interpleader* [# 31, # 32], the court addresses the merits of each counterclaim in turn.

## II. *Breach of Fiduciary Duty*

■■ Under Massachusetts law, there is nothing in the relationship between the insured and the insurer that "creates a heightened duty of disclosure."[43] Relationships between an insurance company and an insured are not typically understood to be fiduciary in nature,[44] and an insurer, therefore, does not owe its insured a fiduciary duty "absent 'special circumstances of assertion, representation and reliance.'"[45]

■ Typically, courts find that there is a fiduciary duty where the facts of the case present a special circumstance, such as a continuing relationship between the agent and the insured, or where there is reliance by the insured on the insurer's agent for advice and guidance on the insured's poli-

cies.[46] Finally, even in cases where courts have found a fiduciary duty, an insurer does not have a duty to ensure that the policy holder understands the terms of his policy.[47]

In *McCue v. Prudential Ins. Co. of America* and *Bicknell, Inc. v. Havlin,* the Massachusetts Supreme Judicial Court, and the Massachusetts Appeals Court, respectively, found a duty existed between the insurance company and the insured because the insurance agent improperly advised the insured about his coverage levels. The relationship in both cases was a close one that had been in place for years and the insured relied on the agent to provide advice and guidance about the proper insurance coverage. In *McCue,* the insurance agent convinced his customers, the McCues, not to obtain coverage from another company, assuring them that his company provided adequate coverage.[48] The agent then did not make the necessary change and failed to tell his clients, leaving them uninsured.[49] In *Bicknell,* the insurance agent misunderstood the coverage he provided and told his clients that they were receiving blanket coverage when

est in the proceeds of any certificate unless the certificate has become due and payable in conformity with the provision of the benefit contract.").

43. *Szymanski v. Boston Mut. Life Ins. Co.,* 56 Mass.App.Ct. 367, 778 N.E.2d 16, 27–28 (2002) (holding that insurance company was not required to disclose more information than included in the annual policy statements because company did not owe insured any fiduciary duty).

44. *Baldwin Crane & Equip. Corp. v. Riley & Rielly Ins. Agency, Inc.,* 44 Mass.App.Ct. 29, 687 N.E.2d 1267, 1269 (1997) (citing *Robinson v. Charles A. Flynn Ins. Agency, Inc.,* 39 Mass.App.Ct. 902, 653 N.E.2d 207 (1995)).

45. *Szymanski,* 778 N.E.2d at 27–28 (Mass. App.Ct.2002) (quoting *Baldwin Crane,* 687 N.E.2d at 1269).

46. *McCue v. Prudential Ins. Co. of America,* 371 Mass. 659, 358 N.E.2d 799, 801 (1976) (holding that jury verdict for insured was proper because there were special circumstances that created a heightened duty); *Schwartz v. Travelers Indem. Co.,* 50 Mass. App.Ct. 672, 740 N.E.2d 1039, 1045–46 (2001); *Bicknell, Inc. v. Havlin,* 9 Mass.App. Ct. 497, 402 N.E.2d 116, 119 (1980) (holding insurance agent responsible for lack of coverage because of special circumstances of agency relationship).

47. *Baldwin Crane,* 687 N.E.2d at 1269.

48. *McCue,* 358 N.E.2d at 801–02.

49. *Id.*

he really obtained specific coverage.[50] The insurance agents in both cases held themselves out as an experts, and assured their clients that they had the proper coverage when in fact they did not. It is important to note that in all of the cases where a court has found a heightened duty because of a special relationship, it was the relationship between the insured and the agent, not the company, that created the duty.[51] An insurance broker owes a greater duty to an insured than does an insurance company.[52]

■ Here, to succeed on the claim of breach of fiduciary duty to Monroe, Defendants must establish that Thrivent owed Monroe a duty of care in the first instance and then breached that duty through its conduct. The record reflects that the relationship between the decedent Monroe, and Thrivent is one of an insurer and an insured. There are no facts on the record to indicate that this was the kind of relationship which would have constituted a special relationship creating a heightened duty. Unlike the cases where courts have found an increased duty, Thrivent did not make any misrepresentations or assurances that Monroe's beneficiary change was valid.[53] Nothing on the record to indicate that Monroe had a relationship with any specific Thrivent broker, and Defendants Stojny and LaBlue only claim that Thrivent breached its duty to Monroe.

■ Even if a fiduciary duty existed, Thrivent disclosed all the relevant information about the policy in its October 2002 letter to Monroe, and has therefore met the standard imposed on insurers where there is a fiduciary duty. The letter explicitly outlined that "friend" was not an appropriate beneficiary designation under Monroe's Life Policy and Annuity, and that his attempt to designate Defendants Strojny and LaBlue as beneficiaries was invalid. The letter also explained that the previously designated beneficiaries would remain in place until Monroe took further action. The letter, by itself, thus satisfied any duty Thrivent could possibly have had to Monroe. Thrivent, however, went above and beyond its duty by attempting to assist Monroe in properly designating Defendants Strojny and LaBlue as beneficiaries. The facts show that Thrivent notified Monroe in the October 2002 letter that the beneficiary change was processed in error and that he would need to take further action to effectuate the change he intended.[54] While Monroe might not have understood the letter and did not complete the forms to properly change his beneficiaries, those facts are not relevant to the inquiry into whether Thrivent owed Monroe a duty of care, or whether it breached such a duty if it had one.[55] It is clear, therefore, that Defendants Strojny and LaBlue have not stated a claim against Thrivent for breach of fiduciary duty under Massachusetts law.

50. *Bicknell,* 402 N.E.2d at 118–19.

51. *McCue,* 358 N.E.2d 799 at 801–02; *Wilson v. James L. Cooney Ins. Agency,* 66 Mass.App. Ct. 156, 845 N.E.2d 1187, 1193 & n. 13 (2006); *Martinonis v. Utica Nat. Ins. Group,* 65 Mass.App.Ct. 418, 840 N.E.2d 994, 996–997 (2006); *Schwartz v. Travelers Indem. Co.,* 50 Mass.App.Ct. 672, 740 N.E.2d 1039, 1045–46 (2001); *Bicknell, Inc.,* 402 N.E.2d 116 at 118–19.

52. *Campione v. Wilson,* 422 Mass. 185, 661 N.E.2d 658, 664 (1996).

53. *See generally* Pl.'s St. Mat. Facts ¶¶ 14–15 & Ex. F; Def. Metz St. Mat. Facts ¶ 21; Defs. Strojny and LaBlue St. Mat. Facts ¶ 10; *see also McCue,* 358 N.E.2d at 801–02; *Bicknell,* 402 N.E.2d at 118–19.

54. Pl's St. Mat. Facts Ex. F.

55. *Baldwin,* 687 N.E.2d at 1269 (Mass.1997).

## III. *Negligence*

To bring a claim for negligence, a plaintiff must establish that "the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage."[56] A plaintiff's claim for negligence cannot succeed if the defendant does not owe him a duty of care.[57] Whether a duty exists is a question of law and appropriate for a court to consider on a motion for summary judgment.[58]

In order to succeed on their negligence claim, Defendants must establish that Thrivent owed Monroe a duty of care.[59] Defendants assert that Thrivent had a duty to ensure that Monroe understood the terms of his policy.[60] Under Massachusetts law, insurance companies, however, have no duty to ensure that their members understand a policy's terms.[61] As detailed above, Monroe's misunderstanding of the letter was not a result of any affirmative act on the part of Thrivent. While Thrivent initially processed Monroe's change of beneficiary, the October 2002 letter made clear that Monroe's designation of Defendants Strojny and LaBlue was invalid. The letter clearly stated in the subject line that all of Monroe's policies were affected and even provided partially completed forms to help him properly effect the change of beneficiary that he had intended.[62] The letter further instructed him that he could contact two different sources if he had any questions.[63] Even without a legal obligation to do so, it is evident that Thrivent provided Decedent with the information necessary to understand the terms of his policy and the defective nature of his designation. Monroe had a responsibility to ensure that he understood the terms of his policy and failed to act either to complete the forms needed to change the beneficiary or to contact Thrivent for clarification or assistance.[64] Defendants Strojny and LaBlue have, therefore, failed to provide sufficient evidence to support a claim of negligence against Thrivent.

## IV. *Estoppel*

Under Massachusetts law, an estoppel claim must assert that (1) a party

---

56. *Jupin v. Kask*, 447 Mass. 141, 849 N.E.2d 829, 834–35 (2006) (citing J.R. Nolan & L.J. Sartorio, Tort Law § 11.1 (3d ed.2005)).

57. *Jupin*, 849 N.E.2d at 834–35 (citing *Remy v. MacDonald*, 440 Mass. 675, 801 N.E.2d 260, 262 (2004) ("If no such duty exists, a claim of negligence cannot be brought.")).

58. *See Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 907 N.E.2d 213, 215 (2009); *Long v. Niles Co., Inc.*, No. 08–ADMS–40036, 2010 WL 1139325, at *2 (Mass.App.Ct. March 10, 2010).

59. *See Jupin*, 849 N.E.2d at 834 ("To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care....").

60. Defs.' Opp'n Mot. Summ. J. 9 [# 51].

61. *Baldwin*, 687 N.E.2d at 1269 ("It is not tenable to argue that [the insurance company] has a duty to ensure that [its insured] understood the full import of [a policy term].")

62. Compl., Ex. E.

63. Pl.'s Mot. Summ. J., Ex. F.

64. *See Campione v. Wilson*, 422 Mass. 185, 661 N.E.2d 658, 665 (finding that, "[a]lthough an insured is entitled to rely on his [insurance] broker as his agent, an insured cannot abandon all responsibility for ascertaining the terms of the coverage his broker obtained.") Here, unlike in *Campione*, the record does not contain evidence that Monroe relied upon the representations of any particular insurance broker, and it can be inferred that he therefore took upon himself the duty to understand the terms of his insurance policy.

made "a representation intended to induce reliance on the part of a person to whom the representation is made;" (2) a person acts "in reasonable reliance on the representation;" and (3) the party suffers a "detriment as a consequence of the act...."[65] To satisfy the first prong of estoppel, a party must make a representation to another, intending that the other party rely on the representation.[66] Whether or not the reliance is reasonable depends on the specific facts of the case.[67] An estoppel claim thus requires both a statement intended to induce reliance by the defendant, and detrimental reliance by the plaintiff.[68]

 Defendants Strojny and LaBlue assert their claim of estoppel on Monroe's behalf. The relevant inquiry is therefore into the nature of Thrivent's communications with Monroe, and not into whether Defendants Strojny and LaBlue relied on any statements that may have been made by Monroe indicating that they were his beneficiaries. Defendants Strojny and LaBlue must present facts to show that Thrivent intended to induce Monroe to think that his designation of Strojny and LaBlue was valid. While Thrivent initially accepted Monroe's beneficiary change, the October 2002 letter made it clear that the change was invalid and Monroe's beneficiaries would remain the same as they were before he attempted the change.[69] Further, the October 2002 letter also laid out the steps Monroe needed to take to properly change the beneficiary designation such that Defendants Strojny and LaBlue would ultimately receive the policies' benefits.[70]

While Defendants Strojny and LaBlue make much of Monroe's reliance on the initial letter acknowledging the beneficiary change, there cannot be reasonable reliance without first a representation intend-

---

**65.** *Bongaards v. Millen,* 440 Mass. 10, 793 N.E.2d 335, 339 (2003).

**66.** *Sullivan v. Chief Justice for Admin. And Management of Trial Court,* 448 Mass. 15, 858 N.E.2d 699, 711 (2006) ("'Circumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.'") (quoting *Bongaards,* 793 N.E.2d at 339); *Lunt v. Aetna Life Ins. Co. of Hartford, Conn.,* 261 Mass. 469, 159 N.E. 461, 463 (1928) ("In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequences might follow.") (internal quotations omitted); *see Hamilton v. Hanover Ins. Co.,* 75 Mass.App.Ct. 1113, 916 N.E.2d 774 (2009) (citing *Lunt,* 159 N.E. at 463, and dismissing a claim of estoppel claim on summary judg-

ment because there was no evidence to support the assertion that the insurance company made representations which induced reliance).

**67.** *Kanamaru v. Holyoke Mut. Ins. Co.,* 72 Mass.App.Ct. 396, 892 N.E.2d 759, 766–767 (2008) (quoting *Weston Forest & Trail Assn., Inc. v. Fishman,* 66 Mass.App.Ct. 654, 849 N.E.2d 916, 921 (2006) ("reliance by the party claiming estoppel must have been reasonable in the circumstances.")); *Giuffrida v. High Country Investor,* 73 Mass.App.Ct. 225, 897 N.E.2d 82, 93 (2008) ("[T]hey offer no explanation of their reliance, so no estoppel."); *Medeiros v. Middlesex Ins. Co.,* 48 Mass.App.Ct. 51, 716 N.E.2d 1076 (1999) (holding estoppel applied because plaintiff relied on a promise made by an insurance agent that she would be properly covered).

**68.** *Cannon v. Cannon,* 69 Mass.App.Ct. 414, 868 N.E.2d 636, 643 (2007).

**69.** Pl.'s St. Mat. Facts, Ex. F.

**70.** *Id.*

ed to induce reliance.[71] The facts cannot lead to a reasonable inference that Thrivent intended to deceive Monroe. The October 2002 letter demonstrates that Thrivent intended to clear up any misunderstanding created by their first letter which indicated the change was valid. The October 2002 letter stated that it applied to both the Life Policy and Annuity, that "friend" wars not a proper beneficiary under either policy as a result of state and federal regulations governing fraternal benefit societies, and included forms for Monroe to complete if he wanted his policy benefits to go to Defendants Strojny and LaBlue upon his death.[72] Any misunderstanding of, or reliance on, the initial change was despite Thrivent's representations. Defendants' claim, therefore, has not met the elements required to establish estoppel.

### V. Violation of M.G.L. ch. 93A

Mass. Gen. Laws ch. 93A § 2 declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...."[73] Claims brought under Mass. Gen. Laws ch. 93A require that a plaintiff asserting the violation prove that he suffered a loss as a result of the defendant's unfair or deceptive business practices.[74] Claims of unfair or deceptive business practices in violation Mass. Gen. Laws ch. 93A also require more than allegations of negligence.[75] Where, "nothing in [a 93A] claim [ ] suggests an unfair or deceptive act but instead sounds in negligence," that claim must fail as a matter of law.[76]

Here, the only misbehavior that Defendants allege against Thrivent is a failure adequately to notify Monroe of the terms of the Life Policy and the Annuity in relation to his attempt to change the policy beneficiary to two "friend[s]."[77] These claims don't even sound in negligence, if anything, and Defendants Strojny and LaBlue do not offer any evidence that Thrivent's behavior constitutes an unfair or deceptive business practice.[78] The record, including Defendants' *Statement of Undisputed Material Facts* is entirely devoid of evidence that Thrivent engaged in any unfair or deceptive practices in its dealings with Monroe.[79] "A negligent act, standing

---

71. *Cannon,* 868 N.E.2d at 643 (grant of summary judgment reversed because there were facts on the record that could lead to the inference that the party made a promise that "reasonably could be expected to induce forbearance of a substantial character and did so.").

72. *Id.*

73. Mass. Gen. Laws ch. 93A § 2(a)

74. Mass. Gen. Laws ch. 93A § 9(1); *Hershenow v. Enterprise Rent–A–Car Co. of Boston, Inc.,* 445 Mass. 790, 840 N.E.2d 526, 532 (2006) ("[T]o warrant an award of damages under G.L. c. 93A, there must be a 'causal connection between the seller's deception and the buyer's loss.'" (quoting *Kohl v. Silver Lake Motors, Inc.,* 369 Mass. 795, 343 N.E.2d 375 (1976))).

75. *Meyer v. Wagner,* 429 Mass. 410, 709 N.E.2d 784, 793 (1999); *Darviris v. Petros,* 442 Mass. 274, 812 N.E.2d 1188, 1192 (2004) ("'[A] violation of G.L. c. 93A requires, at the very least, more than a finding of mere negligence."); *Aquino v. Pacesetter Adjustment Co.,* 416 F.Supp.2d 181, 192 (D.Mass.2005).

76. *Meyer,* 709 N.E.2d at 793.

77. Defs.' Opp. Mot. Summ. J. at 9.

78. Def. Strojny & LaBlue's Counterclaims [# 5] ¶ 30; Def. Strojny & LaBlue Opp. Mot. Sum. Jmt. 2 [# 51] (asserting the 93A claim but providing no argument or evidence to support the claim).

79. *See* Defs.' Strojny and LaBlue St. Material Facts [# ].

alone, will not support Chapter 93A liability."[80] Defendants' claims for a 93A violation, therefore, must fail.

### C. Defendant Metz's Motion for Summary Judgment.

### I. Contractual Relationship Between Thrivent and Monroe

 Beneficent societies, like Thrivent, are governed by Mass. Gen. Laws ch. 176 § 1 et seq. Section 23 of the statute provides that the society will issue a benefit certificate to each member of the organization.[81] That certificate becomes the binding agreement between the insured and the organization.[82] Any duly enacted changes to the organization's by-laws or constitution become part of the original agreement between the parties and form the basis of that agreement going forward.[83] The organization's by-laws govern who can properly be designated as a beneficiary.[84] Under Massachusetts law, when a beneficiary designation is invalid, the policy benefit is paid to the beneficiary that the policy holder named before attempting the invalid designation.[85] The benefit certificate is a contract and is governed by the principles of contract law.[86] An unambiguous contract must be enforced according to its terms.[87]

 Defendants Strojny and LaBlue are not proper beneficiaries under the plain terms of the Life Policy and Annuity. Monroe's attempt to designate a "friend" as a beneficiary was invalid according to Thrivent's by-laws which were expressly incorporated into the agreement Monroe signed when he purchased the Life Policy and Annuity.[88] It is undisputed that those policies precluded Monroe's designation of Defendants Strojny and LaBlue as benefi-

**80.** Aquino, 416 F.Supp.2d at 192 (citing Glickman v. Brown, 21 Mass.App.Ct. 229, 486 N.E.2d 737 (1985))

**81.** Mass. Gen. Laws ch. 176 § 23. Mass. Gen. Laws ch. 176 § 23.

**82.** Id.; Goldman v. Commercial Travellers E. Acc. Ass'n, 302 Mass. 74, 18 N.E.2d 373 (1938)

**83.** Mass. Gen. Laws ch. 176 § 23; see also Goldman, 302 Mass. 74, 18 N.E.2d at 374 (1938) (holding that an insured could not recover against insurance company for injuries sustained because the insurance company amended its by-laws to exclude recovery for such injuries); Pain v. Societe St. Jean Baptiste, 172 Mass. 319, 52 N.E. 502, 503 (1899) (finding that amended by-laws applied to benefits received of person who got policy before amendment).

**84.** Mass. Gen. Laws ch. 176 § 21 ("A society may, through its laws or rules, limit the scope of beneficiary designations...."); O'Brien v. Massachusetts Catholic Order of Foresters, 220 Mass. 79, 107 N.E. 400, 401 (1915).

**85.** Doherty v. Ancient Order of Hibernians Widows' and Orphans' Fund, 176 Mass. 285, 57 N.E. 463 (1900) (holding that policy benefits should be collected by the previously named beneficiary after an invalid designation); Elsey v. Odd Fellows Mut. Relief Ass'n., 142 Mass. 224, 7 N.E. 844, 846 (1886) ("We can see no reason to suppose that the later assignment was intended to operate as a revocation of the designation to the wife, unless it took effect as a designation to the mother.");

**86.** Delaney v. Grand Lodge A.O.U.W. of Mass., 244 Mass. 556, 138 N.E. 918, 922 (1923) (describing the insurance policy as a contract); Surabian Realty Co., Inc. v. NGM Ins. Co., 462 Mass. 715, 718, 971 N.E.2d 268 (2012) (quoting Citation Ins. Co. v. Gomez, 426 Mass. 379, 688 N.E.2d 951, 952 (1998) ("Interpretation of an insurance policy is no different from interpretation of any other contract.")).

**87.** Jacobs v. U.S. Fidelity & Guar. Co., 417 Mass. 75, 627 N.E.2d 463, 464 (1994); Ober v. Nat'l Cas. Co., 318 Mass. 27, 60 N.E.2d 90, 91 (1945).

**88.** Pl.'s St. Mat. Facts ¶ 10, Ex. C.

ciaries.[89] Because Monroe's designation was invalid, it never took effect, and his designated beneficiaries remained Harold Monroe and Allison Metz.[90] Defendant Metz, as the previously named beneficiary is, therefore, the proper beneficiary of the Life Policy and Annuity. The unambiguous terms of the contract as written, designating Defendant Metz as the beneficiary, must be enforced. Defendant Metz is, therefore, the proper beneficiary under both Massachusetts law and the terms of the insurance contract.

## II. *Defendants' Estoppel Claim*

■ A claim for estoppel must establish that the defendant made "a representation intended to induce reliance" on the part of the plaintiff, that the plaintiff acted "in reasonable reliance on the representation" to his detriment.[91] "Reduced to basic terms, promissory estoppel 'consists simply of a promise that becomes enforceable because of the promisee's reasonable and detrimental reliance.' "[92]

As set forth above, Defendants Strojny and LaBlue do not present any facts that could lead to the inference that Thrivent intentionally misrepresented its position in correspondence with Monroe. There is also no evidence that Thrivent intended to induce Monroe into thinking his designation was valid. While Thrivent initially indicated that it would accept Strojny and LaBlue as beneficiaries, the letter was sent in error.[93] Once Thrivent realized its mis-

take, it sent the October 2002 letter, making clear that the designation of Strojny and LaBlue was invalid.[94] Thrivent further attempted to help Monroe make the designation in a way that would reflect his intent to have the policy benefits paid to Strojny and LaBlue.[95] Thrivent provided partially completed forms in the October 2002 letter for that purpose. Monroe, nonetheless failed to act. It appears from the record that Thrivent did not intend to mislead Monroe, but rather took appropriate steps to correct what amounted to a mistake by assisting Monroe in properly changing his beneficiaries. Defendants' estoppel claim, therefore, must fail.

## IV. *Order*

For the reasons stated above, Thrivent's *Motion for Summary Judgment* [# 30] is ALLOWED. Because Defendants Strojny and LaBlue are not valid beneficiaries under the policies, Defendant Metz's *Motion for Summary Judgment* [# 30] is ALLOWED. In light of the disposition of the *Motions for Summary Judgment,* and the court's thorough consideration of the counterclaims raised by Defendants Strojny and LaBlue, Defendants Strojny and LaBlue's *Motions to Vacate Final Decree of Interpleader* [# 31, # 32] are DENIED AS MOOT. In reaching its conclusion, the court did not rely upon the evidence contested in Defendant Metz's *Motion to Strike* [# 67] and Thrivent's *Motion to Strike* [# 70]. Those motions are accord-

**89.** Pl.'s St. Mat. Facts ¶ 14; Def. Metz St. Mat. Facts ¶ 13; Defs. Strojny and LaBlue St. Mat. Facts ¶ 9.

**90.** *See* Pl's St. Mat. Facts, Ex. C, Thrivent Articles of Incorporation and Bylaws [# 30–4] § 5 (listing eligible beneficiary designations).; *see also* Pl's St. Mat. Facts, Ex. F.

**91.** *Brown v. Marone*, 81 Mass.App.Ct. 1128, 2012 WL 1191893, at *1 (quoting *Bongaards,* 793 N.E.2d at 339).

**92.** *Brown,* 2012 WL 1191893, at *1 (quoting *Rooney v. Paul D. Osborne Desk Co.,* 38 Mass. App.Ct. 82, 645 N.E.2d 50, 51 (1995)).

**93.** Defs. Strojny and LaBlue St. Mat. Facts ¶ 8, Ex. 4; Def. Metz St. Mat. Facts ¶ 19.

**94.** Pl. St. Mat. Facts ¶ 14, Ex. F.

**95.** Pl. St. Mat. Facts ¶ 14, Ex. F.

ingly DENIED AS MOOT. This case is CLOSED.

IT IS SO ORDERED.